UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ROGER BASKIN,** | } |
| Plaintiff, | } |
| v. | } |
| **PIERCE & ALLRED CONSTRUCTION, INC.,** | } **Case No.: 3:21-cv-00215-MHH** |
| Defendant/Third-Party Plaintiff, | } |
| v. | } |
| **RANDY AKINS, *et al.*,** | } |
| Third-Party Defendants. | } |

### MEMORANDUM OPINION AND ORDER

Roger Baskin has sued Pierce & Allred Construction, Inc. for breach of contract and breach of warranty. (Doc. 1). Mr. Baskin's claims concern P&A's construction of his lake house. P&A has filed a third-party complaint against several subcontractors for indemnification. (Doc. 26). One of the subcontractors, Maintenance Plus Heating & Air Condition Inc, has filed a motion for partial summary judgment. (Doc. 51). P&A has filed a motion for summary judgment on

1

Mr. Baskin's claims and motions to strike part of Mr. Baskin's response brief and summary judgment evidence. (Doc. 61; Doc. 68; Doc. 69; Doc. 73).[1]

This opinion resolves the parties' motions. The Court begins with an overview of the relevant facts. The Court then resolves some preliminary procedural matters before turning to the merits of the parties' arguments. Because P&A's motions to strike, P&A's request for dismissal under the spoliation of evidence doctrine, and the summary judgment motions involve different standards of review, the Court outlines the standard governing each aspect of the parties' motions before considering the questions presented in the motions.

## I.

In September of 2016, P&A agreed to demolish Mr. Baskin's house on Wilson Lake and build a new house in its place. Mr. Baskin signed a proposal for the work, authorizing P&A to construct the new house. (Doc. 71-17, p. 2). The signed proposal obligated P&A to construct the lake house "in accordance with the plans, specifications and materials designated therein prepared by Quirk Designs and submitted by the Owner." (Doc. 71-17, p. 2). P&A agreed to furnish:

1. Material for all phases of construction as agreed upon by the owners.
2. Labor for all phases of construction as agreed upon by the owners.

---

[1] Docs. 68 and 69 reflect the same substantive filing, but P&A has titled Doc. 68 as P&A's response to Maintenance Plus's motion for partial summary judgment and Doc. 69 as P&A's motion to strike Maintenance Plus's motion for partial summary judgment. (*See* Doc. 68; Doc. 69). Citations to Doc. 68 refer to P&A's contentions in both Doc. 68 and Doc. 69.

2

    3. Qualified craftsmen to perform all work.

    4. Bid for each Sub-Contractor (copy to be delivered to Owner).

    5. Standard Homeowner's Warranty for one year on all workmanship and requiring repairs of all defective work and Builder's cost.

(Doc. 71-17, p. 2). The other terms of the contract included:

> Builder to deliver all manufacturers' warranties (hvac, roofing, appliances, etc.) to Owner.
>
> Subcontractors are to be determined by Contractor and approved by Owner.
>
> All work to comply with Southern Building codes and City of Muscle Shoals Codes.
>
> [P&A] will oversee the job from ground up. [P&A] will furnish all tools and standard equipment to do the job. All invoices furnished by [P&A] will be submitted every two weeks and are payable upon receipt. Either David Pierce or Jake Pounds will be on job site every day that work is performed.
>
> [P&A] proposes hereby to furnish material and labor in accordance with the Plans for budgets to be approved by the Owner.
>
> [P&A] contractor fee is 12% of total cost.

(Doc. 71-17, pp. 2–3).[2] P&A included in the proposal a notice provision that stated: "Under Alabama Mechanics' Lien Law, any contractor, subcontractor, laborer, materialman or other person who improve [sic] your property and is not paid for his labor, services or material, has a right to enforce his claim against your property by the filing of a lien against the property." (Doc. 71-17, p. 3).

---

[2] Mr. Pounds was the project foreman. (Doc. 63-2, p. 6, tp. 19).

The parties' agreement does not contain a completion date, (Doc. 71-17, pp. 2–3), and Mr. Baskin does not recall whether the parties agreed to a set term, (Doc. 71-1, pp. 239–40). Mr. Pounds expected construction to take "12 to 16 months," and he acknowledges that "the project was to be completed within 15 months or in about January of 2018." (Doc. 63-2, pp. 16, 17, tpp. 57, 63). Mr. Baskin wanted the cost of construction "to be between eight and nine hundred thousand and definitely not over a million" dollars. (Doc. 71-1, p. 45). Mr. Baskin paid P&A more than $1,000,000, but he does not recall exactly how much more he paid. (Doc. 71-1, pp. 153–54).

On January 28, 2019, one year beyond the anticipated month of completion, P&A sent Mr. Baskin a letter terminating the parties' relationship. (Doc. 71-17, p. 1). P&A revised the letter two days later. (Doc. 71-18, p. 1). When P&A terminated the parties' agreement, P&A's Justin Allred described the construction project as "substantially complete," and he estimated P&A had finished between 80 and 85 percent of the required work on Mr. Baskin's house. (Doc. 71-3, pp. 39–40). Mr. Pounds described the project as "85, 90 percent" complete "at least." (Doc. 62-3, p. 16). P&A terminated the construction contract because Mr. Baskin "fail[ed] to make timely payments required by the agreement." (Doc. 71-18, p. 1). P&A noted a total of $8,608.84 in unpaid invoices at the time of termination. (Doc. 71-18, pp. 1, 4). Mr. Baskin did not pay these invoices. (Doc. 71-1, p. 129).

When P&A terminated the contract, Mr. Baskin asked Lisa Baskin, his former wife, to secure the lake house. (Doc. 71-4, p. 66). When Ms. Baskin saw the house, she "became upset" about "the stage the house was in and the amount of money" that had already been invested. (Doc. 71-4, p. 70). Using her cellphone, she documented the state of construction in several video recordings. (*See, e.g.*, Doc. 71-4, pp. 57–58).

Ms. Baskin arranged for Robbie King of King & Associates General Contractors, Inc. to complete construction, and Mr. Baskin paid Mr. King for his work on an hourly basis. (Doc. 71-1, pp. 137, 159–62). Before Mr. King began his work in earnest, Mr. Baskin retained counsel, and Mr. Baskin's attorney hired Andrew Lee to inspect the house. (Doc. 71-16, p. 41). Mr. Lee completed an inspection of the house on August 16, 2020 and prepared a report. In the report, Mr. Lee noted numerous construction defects in the house. (Doc. 71-7).

In September 2020, Mr. Baskin sued P&A in Tennessee state court for breach of contract and breach of warranty. (Doc. 70-1). The record does not disclose what came of Mr. Baskin's state court lawsuit. Mr. Baskin sued P&A in this case on February 11, 2021. (Doc. 1, p. 1). During this litigation, P&A hired a construction expert, Michael Strayer. Mr. Strayer inspected the house on May 12, 2023 and submitted a report. (Doc. 59, pp. 17–27). Mr. Strayer asserts that he could not determine whether many of Mr. Baskin's and Mr. Lee's alleged defects constituted

5

defective construction because "many of these conditions appear to have been altered from their original state." (Doc. 60, p. 2, ¶ 4).

## II.

### A.

In a motion to strike, (Doc. 73), P&A has asked the Court to disregard the pages of Mr. Baskin's response brief that exceed the 30-page limit imposed in the initial order, (Doc. 21), in this case. Mr. Baskin's brief contains 36 substantive pages. (Doc. 70). Mr. Baskin has asked the Court to accept his brief as filed or to accept his proposed substitute brief. (Doc. 74, pp. 1–2, ¶ 1; Doc. 74-1). "On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C).

P&A's hands are not clean when it comes to improper filings in this case. P&A included in its motion to strike argument concerning summary judgment evidence. (Doc. 73). Effective December 1, 2010, parties no longer should file motions to strike summary judgment evidence. FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *see* FED. R. CIV. P. 56(c)(2) advisory committee's note to 2010 amendments ("There is no need to make a separate motion to strike."); *Campbell v. Shinseki*, 546 Fed. Appx. 874, 879 (11th Cir. 2013) (citation omitted) ("The plain meaning of [amended Rule 56(c)(2)] show[s] that objecting to

the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily.").

By filing a motion to strike rather than including evidentiary arguments in its summary judgment reply brief, P&A effectively exceeded the 15-page limit for its brief. (Doc. 21, p. 8). P&A filed a 15-page reply brief. (Doc. 72). P&A's motion to strike adds approximately seven substantive pages to its arguments. (*See* Doc. 73). Because both parties have exceeded the Court's page limits without first seeking permission, the Court accepts Mr. Baskin's response brief as filed.[3]

**B.**

P&A argues that the Court should dismiss this action based on spoliation of evidence. Spoliation concerns "the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Mendez v. Wal-Mart Stores E., LP*, 67 F.4th 1354, 1361 (11th Cir. 2023) (internal quotation marks and quotation

---

[3] P&A objects to Mr. Baskin's and Maintenance Plus's submission of witnesses' entire deposition transcripts. (Doc. 68, p. 2, ¶ 2; Doc. 73, p. 3, ¶ 2). P&A overlooks the November 30, 2022 Scheduling Order in this case which states: "If a party relies on deposition testimony in a summary judgment brief, then the party must file the complete deposition transcript and all associated deposition exhibits." (Doc. 36, p. 3; *see also* Doc. 22, p. 3; Doc. 23, p. 3). P&A's objection is frivolous.

P&A objects to a legal conclusion in Maintenance Plus's initial summary judgment brief and to the introductory section and paragraph 26 of Mr. Baskin's response brief because Maintenance Plus and Mr. Baskin did not attach record or legal citations to these portions of their briefs. (*See* Doc. 68, p. 3, ¶ 3; Doc. 51, p. 6; Doc. 73, pp. 4–5, ¶ 3; Doc. 70, pp. 3–4, 10 ¶ 26). These parts of the parties' briefs do not need record or legal citations. Again, the objection is frivolous.

7

omitted). "[A] party's spoliation of critical evidence may warrant the imposition of sanctions." *Mendez*, 67 F.4th at 1361–62 (internal quotation marks and quotation omitted). "Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citation omitted), *superseded by rule on other grounds as recognized by Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023).

In *Mendez*, the Eleventh Circuit discussed factors district courts should consider in determining whether to sanction a party for spoliation of evidence. *Mendez*, 67 F.4th at 1362; *see also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020). The most important of these is "whether the plaintiff acted in good or bad faith." *Mendez*, 67 F.4th at 1362. "[B]ad faith 'generally means destruction [of evidence] for the purpose of hiding adverse evidence.'" *Skanska*, 75 F.4th at 1312 (italics and quotation omitted). Stated differently, spoliation concerns a party's "'intent to deprive another party of the information's use'" in litigation. *Skanska*, 75 F.4th at 1312 (quoting FED. R. CIV. P. 37(e)(2)). A district court cannot impose spoliation sanctions "for negligently losing or destroying evidence." *Tesoriero*, 965 F.3d at 1184.

Here, the record demonstrates that more than two years into a $1 million plus home construction project that was significantly over budget and delayed, P&A canceled the contract over $8,608.84 in disputed invoices when the house was 80 to 85 percent complete. (Doc. 71-3, pp. 39–40). In its termination letter, P&A did not request an inspection or ask Mr. Baskin to maintain the unfinished house for purposes of possible litigation. (*See* Doc. 71-18, pp. 1–3). The record also demonstrates that Mr. Baskin authorized Ms. Baskin to locate another contractor to complete the house before he became aware of the purported defects in P&A's work. (Doc. 71-2, p. 2, ¶ 6).[4] P&A has not demonstrated that Mr. Baskin hired a contractor to complete the construction of his house "for the purpose of hiding adverse evidence" or for the purpose of depriving P&A of information regarding its work on the house. *Skanska*, 75 F.4th at 1312. Among the cases the parties cite regarding spoliation, the record here most resembles the situation in *Tesoriero*.

In *Tesoriero*, the plaintiff injured her arm when she sat on a chair on a cruise ship, and the chair collapsed. *Tesoriero*, 965 F.3d at 1174. Ms. Tesoriero and her husband "saw that a leg had fallen off the chair," so they photographed the area

---

[4] P&A objects to paragraph 30 of Mr. Baskin's brief and paragraph 6 of his affidavit because each contains a conclusory statement that Mr. Baskin did not act in bad faith in retaining replacement contractors. (Doc. 73, p. 6, ¶ 4; Doc. 70, p. 11, ¶ 30; Doc. 71-2, p. 2, ¶ 6). Affidavits "containing mere conclusions have no probative value" at the summary judgment stage. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (internal quotation marks and quotation omitted). The challenged paragraph in Mr. Baskin's affidavit rests on facts in that paragraph and the one before it, and paragraph 30 in his brief relies on these factual assertions. (*See* Doc. 74, pp. 8–9, ¶ 5.1; Doc. 71-2, p. 2, ¶ 6; Doc. 70, p. 11, ¶ 30). The Court overrules P&A's objection.

where the chair leg should have been attached. *Tesoriero*, 965 F.3d at 1175. A steward removed the broken chair, and a crew member later disposed of the chair. *Tesoriero*, 965 F.3d at 1175. In the lawsuit that followed, Ms. Tesoriero argued that the cruise line had spoliated evidence when it disposed of the chair, and she requested an adverse inference as a sanction for the spoliation. *Tesoriero*, 965 F.3d at 1175.

The cruise line acknowledged that it anticipated litigation immediately after it learned of the incident. *Tesoriero*, 965 F.3d at 1183. The Eleventh Circuit noted: "anticipation of litigation is not the standard for spoliation sanctions—bad faith is." *Tesoriero*, 965 F.3d at 1183. The Eleventh Circuit added: "the party's reason for destroying evidence is what justifies sanctions (or a lack thereof)" and the record must demonstrate that the party responsible for the destruction of evidence was conscious that his case was weak. *Tesoriero*, 965 F.3d at 1184. Because the plaintiff did not ask the cruise line to preserve the chair and because the record did not demonstrate that the cruise line destroyed the chair to hide adverse evidence, the Eleventh Circuit affirmed the district court's refusal to give the plaintiff the benefit of an adverse inference. *Tesoriero*, 965 F.3d at 1185–86.

The record in this case is very similar. When P&A canceled its contract with Mr. Baskin, Ms. Baskin recorded the stage of construction, and she identified a contractor who could complete the work on the house. Though the Baskins and

P&A likely anticipated litigation, there is no evidence that the Baskins knew of specific construction defects or had a sense that their claims in a lawsuit against P&A would be weak when they retained a contractor to complete the work that P&A had left unfinished. Because P&A did not ask Mr. Baskin to preserve the house for inspection when P&A terminated its agreement with Mr. Baskin and because P&A has not demonstrated that Mr. Baskin intended to destroy potentially adverse evidence, the Court will not dismiss Mr. Baskin's breach of contract claim based on spoliation. *See Skanska*, 75 F.4th at 1312.

## C.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The burden of proof in this diversity action "is a substantive issue and is therefore controlled by state law." *Wynfield Inns v. Edward LeRoux Grp., Inc.*, 896 F.2d 483, 491 (11th Cir. 1990) (citations omitted). In Alabama, "proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts." ALA.

CODE § 12-21-12(a).[5]  "Substantial evidence" means "evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven." ALA. CODE § 12-21-12(d).

## D.

P&A argues that Mr. Baskin repudiated the contract and did not give P&A notice of and an opportunity to cure alleged construction defects.  (Doc. 62, pp. 17–21; Doc. 72, pp. 8–15).  Mr. Baskin contends that P&A waived a repudiation defense because repudiation is an affirmative defense under Alabama law, and P&A did not plead repudiation.  (Doc. 70, pp. 28–29; *see also* Doc. 7).[6]

The Eleventh Circuit has held that "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure" to plead the defense "does not cause the plaintiff any prejudice" that warrants waiver. *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1222 (11th Cir. 2012) (internal quotation marks and quotation omitted).  The Eleventh Circuit has indicated that raising an affirmative defense for the first time in a motion for

---

[5] Federal courts sitting in diversity jurisdiction apply state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Because the parties did not include a choice of law provision in their contract, the Court applies Alabama substantive law to resolve the parties' summary judgment motions.

[6] The Court has not found binding precedent that explains whether repudiation is an affirmative defense under Alabama law.

13

summary judgment does not prejudice the plaintiff. *Pensacola*, 684 F.3d at 1222; *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989). Mr. Baskin has not asserted that P&A's omission of repudiation as an affirmative defense prejudiced him, and P&A's assertion of a repudiation defense at summary judgment provided Mr. Baskin notice of the defense. Mr. Baskin responded to P&A's repudiation argument in his opposition brief. (*See* Doc. 70, pp. 28–33). Therefore, the Court may consider the merits of P&A's repudiation argument.

Turning to the merits, under Alabama law, to recover under a contract claim, a plaintiff must prove "'(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's non-performance, and (4) damages.'" *A & W Contractors, LLC v. Colbert*, No. SC-2024-0037, 2024 WL 4178647, at *2 (Ala. Sept. 13, 2024) (quotation omitted). A "plaintiff must show his readiness and ability to perform under the contract, even when the defendant has repudiated the contract." *Beauchamp v. Coastal Boat Storage, LLC*, 4 So. 3d 443, 450–51 (Ala. 2008) (citing *Moss v. King*, 65 So. 180, 183 (1914)). "A repudiation is a manifestation by one party to the other that the first cannot or will not perform at least some of his obligations under the contract." *Turner v. State Farm Mut. Auto. Ins. Co.*, 310 So. 3d 354, 358 (Ala. 2020) (internal quotation marks and quotation omitted). "The general rule with respect to repudiation is that when one party repudiates a contract, the nonrepudiating party is

discharged from its duty to perform." *Turner*, 310 So. 3d at 358 (internal quotation marks and quotation omitted); *see also* 13 WILLISTON ON CONTRACTS § 39:37 (4th ed. & May 2024 update) (citations omitted) ("The repudiating party, on the other hand, cannot demand performance from the nonrepudiating party and may not sue the nonrepudiating party for nonperformance.").

Under Alabama law, "repudiation may be proven only where words or acts evince '*an intention to refuse performance* within the future time allowed by the contract.'" *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d 177, 182 (Ala. 2001) (italics in *HealthSouth*) (quotation omitted). The evidence must demonstrate that a party's refusal to perform was "positive and unconditional." *Int'l Paper Co. v. Madison Oslin, Inc.*, 985 So. 2d 879, 887 (Ala. 2007); *see also HealthSouth*, 799 So. 2d at 182 (citation omitted) ("Essentially, repudiation must amount to an unqualified refusal or declaration of inability to substantially perform the duties outlined in the contract.").

Here, it is undisputed that Mr. Baskin did not pay P&A's December 2018 and January 2019 invoices; the invoices total $8,608.84. (Doc. 62, p. 18; Doc. 63-1, p. 34; Doc. 71-18, p. 1). P&A cites *Coppola Construction Co. v. Hoffman Enterprises Ltd. Partnership*, 117 A.3d 876 (Conn. App. Ct. 2015), for the proposition that Mr. Baskin's nonpayment of invoices constitutes repudiation. The *Coppola* court stated:

> In construction cases, we have stated that "the failure to make progress payments is a breach of contract so substantial as to render the contract

15

> nugatory . . . . The failure to make installment payments when due goes to the essence of a contract . . . . A failure to make any payments for work in progress goes to the root of the bargain of the parties and defeats the object of the parties in making the agreement."

117 A.3d at 894 (quotation omitted); (Doc. 62, p. 18). The reasoning in *Coppola* rests on the United States Supreme Court's decision in *Guerini Stone Co. v. P.J. Carlin Construction Co.*, 248 U.S. 334 (1919). In *Guerini*, the Supreme Court stated:

> [I]n a building or construction contract like the one in question, calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed. . . . As is usually the case with building contracts, it evidently was in the contemplation of the parties that the contractor could not be expected to finance the operation to completion without receiving the stipulated payments on account as the work progressed. In such cases a substantial compliance as to advance payments is a condition precedent to the contractor's obligation to proceed.

248 U.S. at 344–45 (citations omitted).

*Guerini* is unequivocal; only a "a substantial failure to pay would justify the contractor in declining to proceed." 248 U.S. at 344; *see also Guerini*, 248 U.S. at 345 (citation omitted) (noting "substantial compliance as to advance payments is a condition precedent to the contractor's obligation to proceed"). Thus, for non-payment of a periodic payment to amount to an unqualified refusal to perform under a home construction contract, only a substantial failure to pay constitutes

16

repudiation. Here, a genuine issue of material fact exists as to whether Mr. Baskin's failure to pay the December 2018 and January 2019 invoices totaling $8,608.84 amounts to a substantial failure to pay in the context of a contract under which Mr. Baskin already had paid more than $1,000,000. (*See* Doc. 71-18, p. 1; Doc. 63-1, p. 41, tp. 153).

Alternatively, P&A argues that Mr. Baskin may not recover for breach of contract because he did not provide pre-suit notice before bringing his warranty claim. (Doc. 62, pp. 19–21; Doc. 72, pp. 13–15).[7] The proposal Mr. Baskin signed mentions a "Standard Homeowner's Warranty for one year on all workmanship and requiring repairs of all defective work at Builder's costs." (Doc. 71-18, p. 2). The proposal does not state the terms of the warranty, and P&A has not identified another document that it provided to Mr. Baskin that contains specific terms. Absent a contractual notice term, P&A must establish that Alabama law mandates pre-suit notice for a breach of warranty claim. P&A has not done so. Regardless, viewed in the light most favorable to Mr. Baskin, the evidence supports Mr. Baskin's contention that when P&A terminated its contract with him, it was obvious that he would have to hire another contractor to finish the house. Ms. Baskin testified that

---

[7] As a preliminary matter, P&A objects to paragraphs 17, 19, 20, 23, 25, and 45 in Mr. Baskin's response brief "to the extent they claim P&A had notice that alterations were being made." (Doc. 73, p. 4, ¶ 3). The citations in these paragraphs do not support the proposition that P&A had notice of alterations or repairs to the lake house. (*See* Doc. 71-1, pp. 210–12; Doc. 71-3, pp. 89–92; Doc. 71-4, pp. 85–86, 104–06, 107–08, 114–17, 125–28, 163–70). The Court sustains P&A's objection to Mr. Baskin citing this evidence to show notice.

she was so distressed by the state of construction when she visited the house shortly after Mr. Baskin received P&A's termination letter that she recorded the condition of the house. (Doc. 71-4, pp. 57–58, 70). It also was obvious that the construction project was substantially over budget and well past a reasonable completion date. (Doc. 71-2, p. 3, ¶ 10).

For the reasons discussed, the Court denies P&A's summary judgment motion.

### E.

Maintenance Plus argues that the Court should enter judgment for the company on P&A's common law indemnity claim because both parties are responsible for the alleged construction defects. (Doc. 51) (citing *Harris v. Dubai Truck Lines, Inc.*, 347 So. 3d 1231, 1233–34 (Ala. 2021)).[8] In the context of tort actions, the Alabama Supreme Court has distinguished between active and passive negligence and held that "where each [party] is chargeable with active or affirmative [wrongdoing] contributing to the injury, for which recovery was had," the party seeking indemnification cannot recover. *See Sherman Concrete Pipe Mach., Inc. v. Gadsden Concrete & Metal Pipe Co.*, 335 So. 2d 125, 127 (Ala. 1976) (citation omitted).

---

[8] The Alabama Supreme Court recently indicated that indemnity may be available in a civil action. *See Roberson v. Drummond Co.*, SC-2022-0863, 2024 WL 503716, at *6–*7 (Ala. Feb. 9, 2024).

P&A and Maintenance Plus dispute whether P&A engaged in active wrongdoing with respect to the HVAC work on Mr. Baskin's house. (Doc. 51, pp. 5–6; Doc. 67, pp. 5–7).[9] Mr. Lee identified several HVAC-related defects in the house. (Doc. 56, pp. 50, 51, 63, 67–72). Mr. Pounds and Mr. Allred testified that Maintenance Plus performed the HVAC work on the project—not P&A. (Doc. 63-2, p. 6, tp. 20; *see* Doc. 71-3, pp. 133–35). Mr. Pounds testified that he does not have HVAC experience. (Doc. 63-2, p. 5, tp. 14). Mr. Allred testified that at least one of P&A's invoices to Mr. Baskin included a line item "for Maintenance Plus to buy the equipment, the HVAC condensing units." (Doc. 71-3, pp. 169–70).

Maintenance Plus contends P&A engaged in active wrongdoing by installing Mr. Baskin's utility lines on a neighbor's property. (Doc. 51, pp. 5–6). Ms. Baskin testified that Mr. Baskin had to purchase an easement from a neighbor because the "HVAC system was set onto their property." (Doc. 71-4, pp. 92–93). Mr. Baskin testified that "the field lines and some of the utilities he ran are on my neighbor."

---

[9] P&A objects to Maintenance Plus's assertion that "Baskin alleges that Pierce & Allred was actively involved in the construction and repairs of the Baskin's home and was culpable for the purported defects" because Maintenance Plus cites to Mr. Baskin's complaint. (Doc. 68, p. 3, ¶ 3; Doc. 51, p. 5). At the summary judgment stage, parties may not rely on the pleadings; they must support their contentions with citations to record evidence. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citations omitted). Therefore, the Court will consider Maintenance Plus's arguments only to the extent the Court finds support for the arguments in the parties' evidence.

(Doc. 71-1, pp. 75–85).[10] Mr. Baskin testified that P&A installed those utility lines. (Doc. 71-1, pp. 84–85). Mr. Pounds testified that he did not know who installed the utility lines in question. (Doc. 63-2, pp. 33–34, tpp, 127-29). Mr. Allred testified that, as it pertained to the gas line, "the property owner" would bear responsibility for the line's incursion on Mr. Baskin's neighbor's property. (Doc. 66-3, pp. 9–10). The factfinder must resolve this factual dispute at trial.

### III.

Accordingly, the Court sustains in part and overrules in part P&A's objections in its motions to strike.[11] The Court denies P&A's request to dismiss this case based on spoliation. The Court denies P&A's motion for summary judgment, and the Court denies Maintenance Plus's motion for partial summary judgment.

The Clerk of Court shall please TERM Doc. 51, Doc. 61, Doc. 68, Doc. 69, and Doc. 73.

**DONE** and **ORDERED** this March 31, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[10] The record does not make clear to whom Mr. Baskin refers. Based on the context, the Court understands "he" to refer to Mr. Pounds or Mr. Allred or, in a more general sense, to P&A.

[11] The portions of P&A's motions to strike not discussed in this opinion are moot because the Court has not considered the contested material to reach its decision on the pending motions.